IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    **Plaintiff,**

          **v.**

REYNALDO LANDRON-CLASS,

    **Defendant.**

**CRIMINAL NO.** 09-329 (FAB)

## OPINION & ORDER

BESOSA, District Judge.

    Pending before the Court is defendant's renewed motion for release from custody based on an alleged due process violation. (Docket No. 72.)

    For the reasons discussed below, the Court **DENIES** defendant's renewed motion for release from custody.

## I.   Procedural Background

    Given the emphasis on the particular circumstances of a case when a due process violation is asserted, a detailed procedural background is necessary.  The procedural background of defendant's pretrial detention stretches over two separate indictments.

    Prior to the filing of the indictment in this case, defendant Reynaldo Landron-Class ("Landron-Class") was one of twenty-two defendants charged in United States v. Vazquez-Senti, et al., Crim.

No. 07-358 (FAB). (See Crim. No. 07-358, Docket No. 2.)[1] The indictment in Vazquez-Senti, et al., Crim. No. 07-358, charged Landron-Class with one count of conspiracy to possess with intent to distribute and dispense controlled substances in violation of 21 U.S.C. §§ 841(a)(1), and 21 U.S.C. § 846, and one count requesting forfeiture of property used to commit or promote the offense charged, or obtained with profits or proceeds of the offense charged. See id. On September 7, 2007, United States Magistrate Judge Bruce McGiverin found Landron-Class to be a danger to the community and ordered him to be detained without bail pending trial. (Crim. No. 07-358, Docket No. 137.)

On December 3, 2007, Landron-Class filed a motion for a *de novo* hearing as to the matter of pretrial detention without bail. (Crim. No. 07-358, Docket No. 250.) On December 12, 2007, the Court held a *de novo* hearing, and denied Landron-Class's request to be released on bail. (Crim. No. 07-358, Docket No. 254.) In response to several motions to dismiss the indictment in Vazquez-Senti, et al., Crim. No. 07-358, the government filed an opposition stating "that there are actually multiple conspiracies operating independent of each other with the common link being defendant

---

[1] For the purposes of this Opinion and Order, citation to the docket in United States v. Vazquez-Senti, et al., Crim. No. 07-358 (FAB), will appear as "(Crim. No. 07-358, Docket No. __.)". Citation to the docket in the present case will appear as "(Docket No. __.)".

Vazquez-Senti."   (Crim.  No.  07-358,  Docket  No.  943.)   The government requested that the resolution of the defendants motions to dismiss in Vazquez-Senti, et al., Crim. No. 07-358, be held in abeyance because it had decided to re-present its case to the Grand Jury on September 23, 2009, with respect Landron-Class and another defendant, charging them in separate conspiracies.   Id.

On September 30, 2009, a Grand Jury returned an indictment in this case against defendants Landron-Class and Myriam Daisy Perez-Perez ("Perez").   (Docket No. 25-1.)   The indictment contains three counts against Landron-Class: (1) two counts of conspiracy to possess with intent to distribute and dispense controlled substances in violation of 21 U.S.C. §§ 841(a)(1), and 21 U.S.C. § 846; and (2) one count requesting forfeiture of property used to commit or promote the offenses charged, or obtained with profits or proceeds of the offenses charged.   Id.  On October 20, 2009, a bail hearing was held regarding Landron-Class before United States Magistrate Judge Marcos Lopez.   (Docket No. 20.)   Magistrate Judge Lopez found that Landron-Class, while not a flight risk, was a danger to the community and ordered that he be detained pending trial.   Id.   Landron-Class appealed the order of detention on the same day.   (Docket No. 18.)   On December 4, 2009, the Court, considering Landron-Class's criminal history and the seriousness of the   crimes   charged,   affirmed   Magistrate   Judge   Lopez's

Criminal No. 09-329 (FAB)                                                          4

determination, finding that "continuous drug dealing constitutes a
danger to the community."  (Docket No. 55.)

On February 4, 2010, the First Circuit Court of Appeals issued
a judgment on defendant's appeal.  (Docket No. 71.)  After
conducting an independent review of this Court's detention order,
the appellate court found that this Court "was justified in deeming
detention warranted." Id. at 2.  The court of appeals left open
the issue of whether the length of defendant's pretrial detention
violates due process, affirming the Court's treatment of that issue
but "without prejudice to defendant again submitting his due
process claim to the district court in a properly supported
motion." Id.

On February 9, 2010, defendant, Landron-Class filed a renewed
motion for bail on due process grounds.  (Docket No. 72.)  Landron-
Class argues that he should be released on bail because the length
of his pretrial detention violates the Due Process Clause of the
Fifth Amendment.  (Docket No. 72 at 2.)  Defendant states that he
"has been detained pre trial for 29 months and it is impossible to
determine at this stage when his trial will begin." Id.  On
February 23, 2010, the government filed its opposition to the
renewed motion for release from custody.  (Docket No. 83.)  The
government responds that Landron-Class's pretrial detention does
not amount to a violation of due process of law given the

seriousness of the charge, the strength of the government's case and its proof of defendant's dangerousness, and the history and complexity of the case. (<u>See</u> Docket No. 83.) On March 8, 2010, Landron-Class replied to the government's response and requested the imposition of sanctions for an alleged violation of Federal Rule of Criminal Procedure 11 contained in the government's response. (Docket No. 96.)

On January 7, 2010, Landron-Class filed a motion to dismiss the indictment on multiplicity and duplicity grounds. (Docket No. 61.) Landron-Class's motion was referred to Chief Magistrate Judge Justo Arenas for report and recommendation on January 29, 2010. (Docket Nos. 67 & 68.) On February 10, 2010, Chief Magistrate Judge Arenas issued a report and recommendation that the Court deny Landron-Class's motion to dismiss the indictment. (Docket No. 74.) Landron-Class filed an objection to the report and recommendation on February 22, 2010. (Docket No. 81.) On March 8, 2010, Perez-Perez filed her own motion to dismiss the indictment on similar grounds. (Docket No. 97.) On March 10, 2010, the government filed a motion for an extension of time to respond to both Landron-Class's objection to the report and recommendation and Perez-Perez's motion to dismiss the indictment. (Docket No. 102.) On March 25, 2010, the government filed their response, which, *inter alia*, requested that the Court dismiss the

third count of the indictment and sever the trials of Landron-Class
and Perez-Perez.  (Docket No. 106 at 2.)  On March 26, 2010, the
Court granted the government's request to dismiss count three of
the indictment, but denied the government's request to sever the
joint trial of both defendants in this case.  (Docket No. 107.)
The Court scheduled the jury trial in this case to commence on
June 1, 2010 at 9:00 A.M. and stated that no continuances would be
granted.  Id.

## II. Due Process Violation as a Result of Excessive Pretrial Detention

The First Circuit Court of Appeals has stated that "arbitrary
lines should not be drawn regarding precisely when defendants
adjudged to be flight risks or dangers to the community should be
released pending trial." United States v. Zannino, 798 F.2d 544,
547 (1st Cir. 1986) (noting the flexible nature of due process).
Determinations of whether due process has been violated by
excessive pretrial detention:

> should be made on the facts of individual cases, and
> should reflect the factors relevant in the initial
> detention decision, such as the seriousness of the
> charges, the strength of the government's proof that
> defendant poses a risk of flight or a danger to the
> community, and the strength of the government's case on
> the merits.  Moreover, these judgments should reflect
> such additional factors as the length of the detention
> that has in fact occurred, the complexity of the case,
> and whether the strategy of one side or the other has
> added needlessly to that complexity.

Id.

Applying this standard, the First Circuit Court of Appeals stated that "in many, perhaps most, cases, sixteen months would be found to exceed the due process limitations on the duration of pretrial confinement." Id. at 548. "There is, of course, no magic to the sixteen month period referenced in Zannino. The First Circuit was not establishing a minimum time limit before which no due process challenge to detention could be pursued, nor a maximum time limit beyond which no detention could be maintained." United States v. Daniels, 2000 WL 1611124 at *4 (D. Mass. October 5, 2000). Based on the individual consideration of the Zannino factors below, the Court finds that continued pretrial detention is justified and **DENIES** Landron-Class's motion for release from custody.

**A.   Seriousness of the Charges**

The seriousness of the charges against Landron-Class militates in favor of continued pretrial detention. Landron-Class currently stands charged with one count of conspiracy to possess with intent to distribute and dispense controlled substances. (See Docket No. 25-1; Docket No. 107.) Between the two counts, the controlled substances amount to 44.46 kilograms "or more of a mixture or substance containing a detectable amount of Oxycodone, a Schedule II Controlled Substance, outside the scope of

professional practice and not for a legitimate medical purpose."
(See Docket No. 25-2 at 2, 4.)   The indictment alleges that
Landron-Class "obtained two thousand seven hundred (2700) or more
prescriptions of oxycodone, in his name and those of his co-
conspirators, from a medical doctor and caused the same to be
dispensed at various pharmacies."  The indictment refers to three
pharmacies at which Landron-Class allegedly filled those
prescriptions for oxycodone.  (Docket No. 25-2.)

          Defendant points to the substantially reduced amount of
controlled substances alleged in the indictment in this case in
comparison to the indictment in Vazquez-Senti, et al., Crim.
No. 07-358.  This argument, however, ignores the fact that the
indictment in Vazquez-Senti, et al., Crim. No. 07-358, named
twenty-two defendants, whereas the indictment in this case names
only two defendants.  Furthermore, the current indictment charges
Landron-Class with responsibility for 44.46 kilograms of oxycodone
on his own, charging his co-defendant, Perez, with responsibility
for other controlled substances.  (Docket No. 25-1; Docket
No. 107.)  Conviction on the count charged could potentially result
in a term of imprisonment of up to twenty years.  See 21 U.S.C.
841(b)(1)©).  As noted previously by the Court, Landron-Class "is
facing no less than 188 months imprisonment."  (Docket No. 55.)
Accordingly, the Court finds the charges sufficiently serious to

weigh against Landron-Class's due process challenge.  See United States v. Gines-Perez, 152 F. Supp. 2d 137, 152-53 (D.P.R. 2001) (regarding a case alleging a drug conspiracy to distribute large quantities of narcotics to involve serious charges for the purposes of a due process challenge).

**B.    Strength of the Government's Proof that Landron-Class poses a Risk of Flight or a Danger to the Community**

On two separate occasions, United States magistrate judges have found Landron-Class to be a danger to the community. (See Crim. No. 07-358, Docket No. 137; Docket No. 20.)  This Court affirmed that determination on both occasions.  (See Crim. No. 07-358, Docket No. 254; Docket No. 55.)  The First Circuit Court of Appeals also found the Court's determination to be "justified" considering Landron-Class's criminal history and the risk of "'continued narcotics trafficking on bail.'" (See Docket No. 71) (quoting United States v. Hare, 873 F.2d 796, 798 (5th Cir. 1989).

Landron-Class points to no changed circumstances from the time of his bail hearing in this case reflecting a decreased danger to the community if he were to be released.  (See Docket No. 72.)  He only reiterates his position that the conditions of home detention with electronic monitoring would "provide 'reasonable assurance' that protects the safety of the community." (Docket No. 72 at 6.)  This argument was considered at the

October 20, 2009, hearing before Magistrate Judge Marcos Lopez, and deemed insufficient to counter the danger to the community posed by Landron-Class by both the magistrate and this Court. (See Docket No. 32; Docket No. 55.)  The evidence presented by the government at the bail hearing before Magistrate Judge Lopez demonstrated that Landron-Class conducted a substantial amount of his activity in the alleged conspiracy by telephone, including obtaining and filling prescriptions, thus decreasing the possibility that home detention would provide any assurance against Landron-Class's danger to the community.  (See Docket No. 32 at 19-25.)

At the October 20, 2009, bail hearing before Magistrate Judge Lopez, Landron-Class specifically argued that the continuing danger to the community was low because the doctor with which he had conspired, Dr. Vazquez-Senti, had been sentenced and could no longer produce the prescriptions necessary to carry out a criminal conspiracy like the one charged in the indictment.  As noted by Magistrate Judge Lopez, however, Landron-Class "has multiple encounters with the law that date all the way back from 1991," many of which were drug related.  (Docket No. 32 at 23, 25.)  Thus, the unavailability of one potential co-conspirator does not appear to significantly reduce the risk of continued drug-related criminal activity which poses a danger to the community.  Given no other argument from Landron-Class as to why he no longer constitutes such

a danger, the government's proof as to the issue retains sufficient strength to justify continued pretrial detention.

### C.   Strength of the Government's Case on the Merits

Landron-Class makes no argument impugning the strength of the government's case against him on the merits.  The government has represented, however, that it will present "five (5) 'patient' lists, containing the names of over 100 individuals, that [Landron-Class] gave to Dr. Vazquez-Senti in order to write the prescriptions" alleged in the indictment, as well as a recorded telephone call in which Landron-Class instructed Dr. Vazquez-Senti to use one of the lists of "patients" to write prescriptions in furtherance of the conspiracy.  (Docket No. 83 at 10.)  Given the evidence to be presented by the government and the lack of any relevant argument from Landron-Class, this factor supports continued pretrial detention.

### D.   Length of Landron-Class's Pretrial Detention

Taken at face value, the length of Landron-Class's pretrial detention appears to weigh in favor of his release on bail.  Currently, Landron-Class has been detained as a result of the indictments in the present case and Vazquez-Senti, et al., Crim. No. 07-358, for a combined period of thirty-one months.  As noted above, sixteen months of pretrial detention has been considered excessive "in many, perhaps most, cases." Zannino, 798

F.2d at 548.  The duration of pretrial detention, however, "will rarely by itself offend due process."  United States v. Orena, 986 F.2d 628, 631 (2d Cir. 1993).  There have certainly been cases where pretrial detention as longer than sixteen months has been justified in light of factors similar to the others described in Zannino.  See United States v. Vondette, 5 Fed. Appx. 73, 76 (2d Cir. 2001) (forty months); United States v. Millan, 4 F.3d 1038, 1044 (2d Cir. 1993) (twenty-four months); United States v. Melendez-Carrion, 820 F.2d 56, 60 (2d Cir. 1987) (thirty-two months); United States v. Telfair, 2008 WL 5188846 at *4 (D.N.J. Dec. 10, 2008) (twenty-two months).

Defendant points to United States v. Ojeda-Rios, 846 F.2d 167, 169 (2d Cir. 1988), which held thirty-two months of pretrial detention to exceed due process limits.  In Ojeda-Rios, however, the Second Circuit relied on the particular procedural circumstance that trial in that case would not commence for five to six months "and that even when reached, it [would] take many months to try."  See id.  Unlike that case, the Court issued an order on March 26, 2010, mandating that trial in this case will commence on June 1, 2010, and providing that "[n]o continuances will be granted."  (See Docket No. 107.)  Furthermore, trial in this case is not expected to be as lengthy as forecasted in Ojeda-Rios, 846 F.2d at 169.  (See Docket No. 106 at 2.)  The government has estimated in

Criminal No. 09-329 (FAB)                                              13

the present case that trial will last no more than one week for each of the two defendants.  Id.

Although lengthy detention which, "'without speculation, is scheduled to last considerably longer, points strongly to a denial of due process . . . ,'" trial has been scheduled in this case and pursuant to this Court's orders, **will take place** in less than two months.  See Daniels, 2000 WL 1611124 at *6 (quoting United States v. Gonzales Claudio, 806 F.2d 334, 341 (2d Cir. 1986)).  Considering this light at the end of the tunnel, the length of Landron-Class's pretrial detention does not, on its own, mandate his release from custody.

**E.   Complexity of the Case**

The complexity of the case lends justification to the lengthy period of Landron-Class's pretrial detention.   In addressing the complexity of this case in the context of a due process challenge to Landron-Class's pretrial detention, the Court must consider the complexity of both the present case and its predecessor, Vazquez-Senti, et al., Crim. No. 07-358, because the continuous period of detention challenged by Landron-Class is the result of charges brought by the government over the course of those two cases.

The original indictment of Landron-Class in Vazquez-Senti, et al., Crim. No. 07-358, charged twenty-two defendants with

a conspiracy to possess with intent to distribute controlled substances.   See Gonzales-Claudio, 806 F.2d at 341 (noting the complexity of a case involving a similar number of defendants); (Crim. No. 07-358, Docket No. 2.)  As noted by the government, Vazquez-Senti, et al., Crim. No. 07-358, involved "approximately eighteen (18) status conferences; twenty-eight (28) motions that required a response from the government; seventeen (17) change of plea hearings; and thirteen (13) sentencing hearings." (Docket No. 83 at 14.)  The complexity of that case was amplified by the substantial quantity of prescriptions and the scope of the alleged conspiracy.

Although the conspiracy alleged in the present case is less complex than its predecessor and involves far fewer defendants, it retains a significant number of prescriptions and, with regard to Landron-Class, an alleged network exceeding one hundred persons utilized to obtain prescriptions.  (See Docket No. 25-1; Docket No. 32 at 19-25.)  Further, Landron-Class has only been detained for approximately seven months under the indictment in this case.  (See Docket No. 8.)  The majority of his pretrial detention, approximately twenty-four months, occurred under the indictment in the far more complex Vazquez-Senti, et al., Crim. No. 07-358.  (See Crim. No. 07-358, Docket No. 137; Docket No. 8.) Considering the length of Landron-Class's pretrial detention

relative to the complexity of the two consecutive cases brought against Landron-Class, the Court finds that this factor does not support the present due process challenge.

### F.   Whether Either Party's Strategy has Needlessly Added to Complexity

Landron-Class's primary argument that the government has needlessly added to the complexity of the present case regards alleged delayed responses to discovery requests.[2] Specifically, he claims that the government has refused to provide the original prescriptions attributed to Landron-Class by the government in a reasonable manner, and has failed to provide complete Title III call logs. It appears, however, that the government has provided all discovery on which Landron-Class claims the government was dragging its heels.

Defendant claimed in his motion for release from pretrial detention that the government has failed to make available the specific original prescriptions to be used against Landron-Class at

---

[2] Landron-Class also states that "[t]he indictment in Cr. 07-358 had to be dismissed due to the government filing a duplicitous indictment, an error which it voluntarily conceded." (Docket No. 72 at 4.) This statement, aside from being the full extent of Landron-Class's argument on the issue, lacks a basis in the record. The government never made any expression that it conceded defendant's argument that the indictment was duplicitous. After discovering the existence of multiple conspiracies connected to defendant Vazquez-Senti, the government informed the Court that it would be re-presenting the case to the Grand Jury to charge various defendants in separate conspiracies to avoid any potential issues at trial. (Crim. No. 07-358, Docket No. 943.)

trial.  (Docket No. 72 at 5-6.)  The government responded by stating that copies of all of the prescriptions involved in the investigation have been provided to Landron-Class's counsel. (Docket No. 83 at 17.)  It now appears from Landron-Class's reply to the government's response, that he concedes that these prescriptions have been provided, but argues that many do not pertain to Landron-Class and that the collection as a whole contains prescriptions too numerous to be reasonably sorted through.  (Docket No. 96 at 2-3.)

Federal Rule of Criminal Procedure 16 provides that:

Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:

(I) the item is material to preparing the defense;

(ii) the government intends to use the item in its case-in-chief at trial; or

(iii) the item was obtained from or belongs to the defendant.

Fed.R.Crim.P. 16(a)(1)(E).  Landron-Class has not indicated that the government has refused to provide any requested documents in its possession.  The only failure identified by Landron-Class regarding the requested prescriptions is that the government has not organized this discovery in the manner most convenient for his

review.  (See Docket No. 96 at 2-3.)  Defendant points to no case

law supporting his claim that the government should perform this

work for him, and absent any case law to the contrary, this Court

will not force the government to do so.

Landron-Class further claims that the government

neglected to provide him with "complete [Title III] call lines . .

. requested as 'daily logs' since August 25, 2008."  (Docket No. 96

at 5.)  Landron-Class further claims that this action delayed the

filing of his motion to dismiss in Vazquez-Senti, et al., Crim.

No. 07-358, which he claims resulted in the dismissal of the

government's "defective indictment."  (Docket No. 96 at 5.)  There

is significant question, however, as to whether the delay in the

production of these documents is solely the result of the

government failing to turn over documents in its possession.

Having examined the correspondence between counsel regarding the

discovery, there is no indication that the government was

intentionally withholding documents from defense counsel that it

could have provided at any time since the first, informal request

for "daily logs" on August 25, 2008.

The mere fact that the government's last discovery

disclosure regarding the Title III material occurred seven months

after an initial discovery request for material does not equal

Landron-Class's proposition that "[t]he prosecutor delayed for

7 months production of the complete call logs that were in his possession." (Docket No. 26 at 5.) Landron-Class provides no basis for his assertion that the government simply delayed disclosing information which he had requested. (Docket No. 96 at 5-6.) There is a substantial amount of informal correspondence between the government and Landron-Class's counsel regarding the nature of the requested material and the availability of that material. A review of that correspondence and the various status conferences in which the issue was raised reveals that the material originally requested by Landron-Class did not exist. The seven month delay that followed Landron-Class's initial request consisted of an ongoing back and forth between the government and Landron-Class, in which the government provided separate discovery packages in response to complaints from Landron-Class that the material provided was not close enough to what he originally requested.

Even if there were a problem with the manner in which the prescriptions and Title III discovery were provided by the government, Landron-Class failed to address that issue properly as directed by the Court. According to the exhibits submitted by Landron-Class, he first raised the issue of the prescriptions and the Title III discovery in a status conference for Vazquez-Senti, et al., Crim. No. 07-358, on September 18, 2008. (Docket No. 96-2 at 8-9.) After raising the issue at this conference, the Court

repeatedly informed Landron-Class's counsel that if he had a
problem with the manner in which the government provided discovery,
he should file a properly supported motion. (See Crim. No. 07-358,
Docket No. 712 at 12-14.)  A review of the record reveals that in
the seventeen months between that status conference and the motion
for release from custody, Landron-Class failed entirely to raise
the prescription issue again and only raised the Title III issue
intermittently at status conferences.  Considering this inaction in
the face of something that Landron-Class feels would "cause a
substantial delay of trial,"  (See Docket No. 96 at 4), at least
some of the blame for any delay resulting from this alleged
discovery issue could reasonably be said to stem from defense
counsel's decision to ignore the Court's instructions rather than
pursue documents to which he claims his client is entitled, or
identification within those documents, in the manner directed by
the Court.

        Landron-Class has failed to cite to sufficient support
from the record that the government's conduct in providing
requested discovery unnecessarily delayed or complicated the
proceedings in Vazquez-Senti, et al., Crim. No. 07-358.
Furthermore, the exhibits submitted in conjunction with Landron-
Class's motion for release from pretrial detention reveal that the
Court provided Landron-Class with a clearly defined path to seek

relief from any government misconduct in the course of discovery,
i.e., filing a properly supported motion.  A review of the record
shows that Landron-Class chose not to avail himself of that relief
in the course of discovery in <u>Vazquez-Senti, et al.</u>, Crim. No. 07-
358.  Consequently, Landron-Class's belated arguments regarding
that discovery in the motion now under consideration fail to turn
the analysis in favor of his release from pretrial detention.

## III. Alleged Rule 11 Violation[3]

Landron-Class argues that the government violated Federal Rule
of Criminal Procedure 11 ("Rule 11") by revealing details of an
interview with Landron-Class made for the purpose of determining
his value as a cooperating witness in the government's response to
the renewed motion for release from custody.  (Docket No. 96 at 6-
11.)  Landron-Class claims that the government's interview with
defendant constituted a plea discussion for the purposes of
Rule 11.  Landron-Class makes this characterization despite the
clear wording of the letter stating that Landron-Class "should also
understand that this agreement does not constitute plea
bargaining."  (Docket No. 96-8.)  The letter further provided that

---

[3] Landron-Class spends much of his time arguing that the government
has not acted fairly when negotiating a plea agreement.
(<u>See</u> Docket No. 96 at 8-10.)  Rule 11(c)(1) clearly states that
"[t]he court must not participate in [plea negotiation]
discussions."  Therefore, the Court does not consider Landron-
Class's arguments regarding the course of plea agreement
negotiations.

"if this agreement subsequently is construed as constituting plea bargaining, you knowingly and voluntarily waive any rights you have pursuant to Fed. R. Evid. 410 and Fed. R. Crim. P. 11(f), or equivalent provisions which would otherwise prohibit the use against you of statements made during plea discussions." Id.

Even if this interview constituted plea negotiations for the purposes of Rule 11, there is no indication that the government has violated the terms of that rule.  Rule 11 governs the procedures for entering pleas and making plea agreements.  See Fed. R. Crim. P. 11.  The only provision of Rule 11 that appears to be applicable is subsection (f), which states that "[t]he admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed by Federal Rule of Evidence 410."  Federal Rule of Evidence 410 ("Rule 410") prohibits the admission of "any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.  Fed. R. Evid. 410(4).  As stated in Federal Rule of Evidence 1101, however, the Federal Rules of Evidence are not applicable to "proceedings with respect to release on bail or otherwise."  Given the nature of the current proceedings, neither Rule 11 nor Rule 410 provide a basis for taking any action against the government for its disclosure of statements made by Landron-Class in his interview

to become a cooperating witness.  Accordingly, Landron-Class's request to impose sanctions on the government is **DENIED.**

## IV.  Conclusion

For the foregoing reasons, the Court **DENIES** Landron-Class's motion for release from pretrial detention based on the Due Process Clause of the Fifth Amendment.  Further, Landron-Class's request to impose sanctions on the government for an alleged Rule 11 violation is **DENIED.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, April 14, 2010.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE